1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 3/7/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

STEVEN R. PREMINGER, et al.,

    Plaintiffs,

  v.

R. JAMES NICHOLSON, et al.,

    Defendants.

Case Number C 04-2012 JF (HRL)

ORDER[1] (1) GRANTING IN PART AN DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT; AND (3) ADDRESSING PLAINTIFFS' SUBMISSION OF ADDITIONAL EVIDENCE AND ARGUMENT

[Doc. Nos. 93, 96, 109, 121, 127]

   Defendants move for summary judgment as to all of the claims of Plaintiffs' second amended complaint ("SAC"). Plaintiffs move for partial summary judgment as to the first two claims of their SAC. The Court has considered the briefing as well as the oral arguments presented at the hearing on May 26, 2006. While the Court delayed consideration of the parties' motions for some time in deference to proceedings pending in the Federal Circuit and in light of the parties' settlement efforts, the Court now concludes that the Federal Circuit proceedings may

---

[1] This disposition is not designated for publication and may not be cited.

not resolve in the near future and that the parties' settlement efforts have reached impasse.  For the reasons discussed below, Defendants' motion will be granted in part and denied in part, and Plaintiff's motion will be denied.

## I. BACKGROUND

Plaintiff Steven Preminger ("Preminger") challenges his exclusion from Building 331 of the Menlo Park VA[2] campus, to which he sought entry in order to register voters.  Preminger is the chairman of the Santa Clara County Democratic Central Committee ("SCCDCC"), which also is a named plaintiff.

On September 24, 2004, the Court issued an order denying Plaintiffs' motion for a preliminary injunction on the ground that Plaintiffs had not demonstrated a likelihood of success on the merits of their claims.  On August 25, 2005, the Ninth Circuit issued a published decision affirming this Court's denial of preliminary injunctive relief.  Plaintiffs subsequently filed the operative SAC, alleging the following facts:

Building 331 is a 150-bed nursing facility housing veterans who need long-term care. SAC ¶ 29.  It appears from the SAC that Preminger or his associates may have been denied access to Building 331 on February 3, 2004.  Plaintiffs allege that on that date, Defendant Saucha Poulenz ("Poulenz"), a physical therapist at Building 331, stated that "only the League of Woman Voters [of South San Mateo County ('LWVSSMC')] could register voters at the facility." *Id*. at ¶ 32 (bracketed and parenthetical material in the original).  It is unclear from the SAC to whom Poulenz was speaking or whether her comments were in response to attempts to register voters at Building 331.

It likewise appears from the SAC that Preminger or his associates may have been denied access to Building 331 on April 5, 2004, although again the SAC is not entirely clear as to this point.  Plaintiffs allege that "[o]n April 5, 2004, in the presence of other VA employees, Poulenz stated that it was up to families to determine of residents should vote, that LWVSSMC alone was authorized to register voters, and that registration in Building 331 was inappropriate because

---

[2] "VA" is used herein to refer to the United States Department of Veterans Affairs.

Case No. C 04-2012 JF (HRL)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SJ ETC.
(JFLC2)

1  some residents were demented." *Id*. at ¶ 37.  The circumstances giving rise to these comments

2  likewise are unclear.

3  The SAC is more specific in describing an event that occurred on April 15, 2004, in

4  which Preminger, his attorney Scott Rafferty ("Rafferty") and an individual named Lennox

5  Sweeney attempted to enter Building 331 to register voters.  *Id*. at ¶ 39.  Plaintiffs allege that

6  Defendant Karen Girton ("Girton"), an administrator at Building 331, stated that she had

7  received a letter of instruction from Defendant Elizabeth Freeman ("Freeman"), the director of

8  the Palo Alto Health Care System ("PAHCS"), which administers the Menlo Park VA campus.

9  *Id*.  According to Girton, Freeman was angry at Rafferty because he allegedly had lied about his

10  authorization to enter the VA campus.  *Id*.  Girton directed all three men to leave, and summoned

11  the VA police.  *Id*.  One of the VA policemen subsequently stated that Preminger could return at

12  his convenience to register voters at Building 331 or anywhere else on campus other than the

13  psychosocial rehabilitation facility.  *Id*. at ¶ 40.  However, later that afternoon, Freeman's

14  assistant stated that all authorization to register voters on the campus had been withdrawn.  *Id*.

15  On June 7, 2004, Rafferty hand delivered to Freeman a letter requesting her to permit

16  "partisan activities" at all PAHCS facilities.  *Id*. at ¶ 43.  The letter also requested correction of

17  an internal VA memorandum stating that receipt of political contributions on VA property was a

18  criminal offense.  *Id*.  Freeman did not respond to Rafferty's letter.  *Id*.

19  The SAC alleges the following claims:  (1) violation of the First Amendment; (2)

20  intimidation of lawful political contributions; (3) violation of the Equal Protection clause of the

21  Fifth Amendment; (4) conspiracy to violate civil rights in violation of 42 U.S.C. § 1985(3); and

22  (5) violation of the National Voter Registration Act.

23  ## II. LEGAL STANDARDS

24  A motion for summary judgment should be granted if there is no genuine issue of

25  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

26  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

27  the initial burden of informing the Court of the basis for the motion and identifying the portions

28  of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

3

1  demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

2  317, 323 (1986).

3      If the moving party meets this initial burden, the burden shifts to the non-moving party to

4  present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

5  *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

6  evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

7  party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49;

8  *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

9                          **III. DISCUSSION**

10  **A.      First Claim:  Violation Of The First Amendment**

11      Plaintiffs' first claim for violation of the First Amendment contains a number of

12  subclaims: (a) application of 38 C.F.R. § 1.218(a)(14) beyond its terms; (b) arbitrary and

13  viewpoint based discrimination in the application of § 1.218(a)(14); (c) ban of buttons and

14  bumper stickers; (d) limitation on access based on party status; and (e) failure to accommodate

15  partisan voter registration / encouragement of illegal registration.  The parties have filed cross-

16  motions for summary judgment as to these claims.

17      **1.      Application Of § 1.218(a)(14) Beyond Its Terms**

18      Plaintiffs assert that voter registration does not fall within the activities prohibited by §

19  1.218(a)(14).  That section reads in its entirety as follows:

20      (14) Demonstrations.

21      (i) All visitors are expected to observe proper standards of decorum and decency
        while on VA property. Toward this end, **any service, ceremony, or**
22      **demonstration, except as authorized by the head of the facility or designee, is**
        **prohibited.** Jogging, bicycling, sledding and other forms of physical recreation on
23      cemetery grounds is prohibited.

24      (ii) For the purpose of the prohibition expressed in this paragraph, **unauthorized**
        **demonstrations or services shall be defined as**, but not limited to, picketing, or
25      similar conduct on VA property; any oration or similar conduct to assembled
        groups of people, unless the oration is part of an authorized service; the display of
26      any placards, banners, or foreign flags on VA property unless approved by the
        head of the facility or designee; disorderly conduct such as fighting, threatening,
27      violent, or tumultuous behavior, unreasonable noise or coarse utterance, gesture or
        display or the use of abusive language to any person present; **and partisan**
28      **activities, i.e., those involving commentary or actions in support of, or in**

                                  4

**opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise.**

(emphasis added).  Plaintiffs assert that, because voter registration workers must offer forms to persons regardless of their party affiliation, the act of registering voters is not a "partisan" act within the meaning of § 1.218(a)(14).  Plaintiffs also assert that Preminger and Sweeney had agreed that they would refrain from any political commentary, and would refrain from disclosing their party affiliation, if they were permitted to register voters at Building 331, but that Girton nonetheless refused to permit them to register voters.

In its order denying Plaintiffs' motion for preliminary injunction, this Court expressed the opinion that "an outright and unconditional ban on voter registration at a VA facility simply because of party affiliation likely is unconstitutionally overbroad," but denied preliminary injunctive relief based upon evidence that exclusion from Building 331 was reasonable based upon the state of the record with respect to the alleged conduct of Preminger, Rafferty and Sweeney.

In its decision affirming this Court's denial of Plaintiffs' motion for preliminary injunction, the Ninth Circuit noted that "Plaintiffs have assumed that their voter registration effort was a partisan activity" within the meaning of § 1.218(a)(14).  *Preminger v. Principi*, 422 F.3d 815, 824 (9th Cir. 2005).  The Ninth Circuit's decision therefore does not resolve the question of whether a voter registration drive by a political party constitutes "partisan" activity.

Having considered the parties' extensive briefing on this issue in connection with the pending cross-motions for summary judgment, and the authorities cited therein, this Court now concludes that a voter registration drive by a political party properly may be characterized as "partisan" activity within the meaning of § 1.218(a)(14).  In *Monterey County Democratic Central Committee v. USPS*, 812 F.2d 1194 (9th Cir. 1987), cited with approval in the appellate decision in this case, the Ninth Circuit upheld a United States Postal Service guideline prohibiting voter registration by partisan groups on postal premises.  The court concluded that the postal property in question was a nonpublic forum and that the guideline was reasonable in light of the purpose that the forum served.  *Id*. at 1198.  The court held that objective of the Postal

5

1  Service is to collect, sort and deliver the mail nationwide, and that the Postal Service reasonably

2  could believe that freedom from the appearance of involvement in the political process is critical

3  to its ability to carry out this objective. *Id*. at 1199. The court held that the guideline was

4  viewpoint-neutral, because "[b]y excluding all partisan groups from engaging in voter

5  registration – conduct permitted by non-partisan groups – the Postal Service is not granting to

6  one side of a debatable public question a monopoly in expressing its views." *Id*. at 1198-99

7  (internal quotation marks and citation omitted).

8  　　The regulation at issue in the instant case is broader than was the guideline addressed in

9  *Monterey County*.[3] However, *Monterey County* clearly indicates that voter registration by a

10  political party properly can be considered partisan activity, and that the prohibition of such

11  activity in a non-public forum is constitutional if such prohibition is reasonable and not an effort

12  to suppress a particular point of view. This Court has determined that Building 331 is a non-

13  public forum, which determination has been affirmed by the Ninth Circuit. Accordingly, to the

14  extent that Defendants excluded Plaintiffs pursuant to a viewpoint-neutral policy of declining to

15  allow *any* political party to conduct a voter registration drive at Building 331, the Court

16  concludes as a matter of law that such exclusion does not constitute an application of §

17  1.218(a)(14) "beyond its terms."

18  　　**2.　　Arbitrary Or Discriminatory Application Of § 1.218(a)(14)**

19  　　The question remains, however, whether Plaintiffs' exclusion in *this* case was the result

20  of such a policy rather than – as Plaintiffs contend – an effort to suppress Plaintiffs' particular

21  point of view. In its order of September 24, 2004, denying Plaintiffs' request for preliminary

22  injunction, the Court expressed frustration at Defendants' previous failure to articulate their

23  reasons for denying or restricting Plaintiffs' access to Building 331. Order of Sept. 24, 2004 at 3.

24  The Court went on to state that Defendants had articulated their reasons only in a second

25  supplemental brief in opposition to Plaintiffs' motion for preliminary injunction. *Id*. The Court

26  noted Defendants' statements that the VA had made a policy decision that it wished to remain

27  

28  　　　[3] Plaintiffs' facial challenge to the regulation, for overbreadth as well as other alleged constitutional deficiencies, is still pending before the Federal Circuit.

6

1  non-partisan in the eyes of the public and VA residents, and for that reason had restricted voter

2  registration to non-partisan groups like the League of Women Voters and California Protection

3  and Advocacy. *Id.* at 4.  As far as the Court can discern from the record, however, Defendants

4  have never expressed this policy in an official publication or statement, despite repeated requests

5  by Plaintiffs that they do so.

6          Instead, Defendants have made accusations against Preminger and his counsel of

7  inappropriate conduct at Building 331, citing this conduct as part of the reason for their

8  exclusion.  *See* Dwight Wilson Decl., ¶ 9; Karen Girton Decl., ¶¶ 2-7; Myrel Willeford Decl., ¶¶

9  2-4.  Prominent in the declarations submitted by Defendants are references to the (undisputed)

10 fact that Preminger's counsel was wearing a Kerry button.  Karen Girton Decl., ¶ 6; Myrel

11 Willeford Decl. ¶¶ 3, 7.  There also is evidence that Defendants permitted outside persons to

12 enter Building 347 on the Menlo Park VA campus, a closed drug rehabilitation facility, for the

13 purpose of registering voters as Republican.  On May 25, 2006, Plaintiffs' counsel submitted a

14 request for judicial notice accompanied by a declaration of counsel bearing the same date.

15 Attached to the declaration are fourteen voter registration forms completed by residents of

16 Building 347 during September and October 2004 with the assistance of three different

17 individuals whose party affiliation, if any, is not noted on the forms.  Scott Rafferty Decl. of May

18 25, 2006 and Exhs. thereto.  All fourteen of the Building 347 residents registered Republican.  *Id*.

19 One reasonable inference that could be drawn from this evidence is that members of the

20 Republican Party entered Building 347 during September and October 2004 for the purpose of

21 registering individual residents.  Because Building 347 is a closed facility, any individual

22 conducting voter registration therein almost certainly had to have permission from VA officials.

23         Defendants object to the registration form evidence on the grounds that the evidence is

24 not an appropriate subject for judicial notice, it  was submitted late, and it does not demonstrate

25 that anyone actually conducted voter registration inside Building 347 (Defendants suggest that all

26 fourteen individuals completed their voter registration forms while off the VA campus).  The

27 Court agrees that the registration forms are not an appropriate subject for judicial notice.

28 However, the Court in its discretion will accept the forms as late-filed evidence in opposition to

7

1    Defendants' motion for summary judgment.  Plaintiffs' counsel explains in his declaration why

2    the evidence was not available previously, and the evidence clearly is relevant to the issues

3    before the Court on this motion.  Accordingly, Defendants' objection is overruled.

4            Defendants note that, despite Plaintiffs' efforts to redact identifying information from the

5    voter registration forms, some identifying information such as email addresses does remain on

6    the forms.  Defendants request that the Court order that the voter registration forms be sealed.

7    That request is granted.

8            In conclusion, the Court concludes that triable issues of material fact exist as to why

9    Defendants excluded Plaintiffs from Building 331.  Those triable issues preclude summary

10   judgment for either side with respect to Plaintiffs' First Amendment claim asserting that their

11   exclusion from Building 331 was arbitrary or discriminatory.

12           **3.      Ban Of Buttons And Bumper Stickers**

13           It does not appear from the facts alleged in the SAC that Plaintiffs were banned from

14   displaying buttons or bumper stickers.  The buttons and bumper stickers that Plaintiffs' counsel

15   displayed appear to be relevant to Plaintiffs' contention that they were excluded from Building

16   331 because they supported Senator Kerry.

17           **4.      Limitation Of Access Based Upon Party Status**

18           As discussed above, the Court concludes that the VA properly may exclude political

19   parties from conducting voter registration at Building 331 *if* such exclusion is pursuant to a

20   viewpoint-neutral policy.  Accordingly, the articulation of such a policy does not provide the

21   basis of a First Amendment claim.

22           **5.      Failure To Accommodate Partisan Voter Registration**

23           Again, the Court concludes that the VA properly may exclude political parties from

24   conducting voter registration at Building 331 *if* such exclusion is pursuant to a viewpoint-neutral

25   policy.  Accordingly, the failure to permit the Democratic Party from conducting voter

26   registration does not provide the basis of a First Amendment claim.

27           **6.      Summary**

28           In summary, the Court concludes as a matter of law that, assuming the facial validity of §

8

1   1.218(a)(14), the VA properly may exclude partisan groups from conducting voter registration at

2   Building 331 *if* such exclusion is pursuant to a viewpoint-neutral policy designed to avoid actual

3   endorsement or the appearance of endorsement with respect to any particular political party.  The

4   unresolved issues in this case are (a) whether Defendants actually have formulated such a policy

5   and (b) whether Plaintiffs were excluded from Building 331 pursuant to such a policy rather than

6   for arbitrary or discriminatory reasons.  Accordingly, while the Court will grant Defendants'

7   motion for summary judgment with respect to the majority of Plaintiffs' First Amendment

8   claims, the Court will deny summary judgment to either side with respect to Plaintiffs' First

9   Amendment claim asserting arbitrary or discriminatory exclusion from Building 331.

10          The Court notes that Plaintiffs' SAC makes reference to a desire to register voters in

11   other areas of the Menlo Park VA campus.  All of the allegations and evidence in the record

12   indicate that Plaintiffs were excluded from Building 331 only.  Accordingly, the Court concludes

13   that claims with respect to other areas of the campus are unripe.  There has been no

14   determination whether other areas of the campus constitute non-public fora and no development

15   of a factual record as to any exclusions from such areas.

16   **B.      Second Claim:  Intimidation Of Lawful Political Contributions**

17          Plaintiffs claim that they and potential contributors to the Democratic Party were

18   "intimated" by an internal VA memorandum dated April 14, 2004, stating that 18 U.S.C. § 607

19   imposes criminal liability for the solicitation or receipt of political contributions on federal

20   property.  There is no evidence that any individual member of the Democratic Party, or any

21   potential contributor, saw this internal memorandum or was threatened with prosecution under §

22   607 during the events in question.  Moreover, Plaintiffs have cited no authority for the

23   proposition that they may sue the VA to force it to correct an internal agency memorandum, even

24   assuming that such memorandum interprets § 607 incorrectly.  Accordingly, the Court will grant

25   Defendants' motion for summary judgment with respect to Plaintiffs' second claim.

26   **C.      Third Claim:  Violation Of Equal Protection**

27          Plaintiffs claim that the VA has violated the equal protection rights of minority and

28   disabled voters by refusing Plaintiffs entry to Building 331.  Plaintiffs' theory appears to be that

9

voter registration groups other than the Democratic Party will not adequately ensure that minority

and disabled veterans are given the opportunity to register to vote.  As is discussed above, a

federal agency may make a policy decision to permit only non-partisan groups to conduct voter

registration on federal property that constitutes a non-public forum.  *See Monterey County*, 812

F.2d at 1198-99.  Moreover, there is no evidence in the record that non-partisan organizations

will not adequately ensure that minority and disabled veterans are given the opportunity to

register to vote.  Accordingly, the Court will grant Defendants' motion for summary judgment

with respect to Plaintiffs' third claim.

**D.   Fourth Claim:  Conspiracy To Violate Civil Rights**

Plaintiffs assert that Defendants conspired to violate Plaintiffs' civil rights as guaranteed

by the First and Fifth Amendments.  A conspiracy to effect a deprivation of a civil right is not

actionable unless there has in fact been a deprivation of the civil right.  *Woodrum v. Woodward

County*, 866, F.2d 1121, 1126 (9th Cir. 1986).  As discussed above, Defendants are entitled to

summary judgment with respect to Plaintiffs' Fifth Amendment claim.  With respect to

Plaintiffs' First Amendment claim, a triable issue of material fact exists as to whether there has

been a deprivation.  However, Defendants contend that even assuming a deprivation of Plaintiffs'

First Amendment rights, Defendants cannot be held liable for conspiracy in light of the

intracorporate conspiracy doctrine, which states that a conspiracy requires agreement between

two or more persons or distinct business entities.  *See United States v. Hughes Aircraft Co., Inc.*,

20 F.3d 974, 979 (9th Cir. 1994).  Defendants contend that all Defendants are VA employees

alleged to have excluded Plaintiffs from Building 331 pursuant to official VA policy and thus

that no liability can attach if the intracorporate conspiracy doctrine applies.  Defendants concede

that the Ninth Circuit expressly has left open the issue of whether the doctrine applies to

government entities as well as private corporations, *see Portman v. County of Santa Clara*, 995

F.2d 898, 910 (9th Cir. 1983), but argues that this Court should follow the reasoning of other

courts that have applied the doctrine to government entities.

If it were clear from the record that all of the individual Defendants acted pursuant to a

single VA policy, the Court might be inclined to follow those decisions that apply the

10

1  intracorporate conspiracy doctrine to government entities.  However, as is discussed above, there

2  is conflicting evidence as to why Plaintiffs were excluded from Building 331.  While some

3  evidence suggests that the exclusion was pursuant to an official VA policy, other evidence

4  suggests that some of the individual Defendants sought to discriminate against Plaintiffs'

5  viewpoint or simply took a dislike to Plaintiffs, or both.  Under these circumstances, it is not

6  clear that the intracorporate conspiracy doctrine would apply in this case, even assuming that the

7  doctrine is applicable to government entities generally.  Accordingly, the Court will deny

8  Defendants' motion for summary judgment as to Plaintiffs' fourth claim.

9  **E.      Fifth Claim:  Violation Of The National Voter Registration Act**

10          Plaintiffs assert that Defendants violated the National Voter Registration Act of 1993

11  ("NVRA"), 42 U.S.C. § 1973gg *et seq*.  Specifically, Plaintiffs assert that Defendants knowingly

12  and willfully attempted to coerce Plaintiffs as a result of the voter registration activities in

13  violation of 42 U.S.C. § 1973gg-10(1)(A).  However, this section sets forth *criminal* penalties for

14  violation of the NVRA.  Plaintiffs have not cited, and the Court has not discovered, any authority

15  permitting the enforcement of this criminal provision in a private civil suit.  The NVRA does

16  provide for a private right of action to enforce provisions set forth at 42 U.S.C. §§ 1973gg-2

17  through 1973gg-6.  *See* 42 U.S.C. § 1973gg-9(b)(2).  However, Plaintiffs do not appear to be

18  alleging any violations of §§ 1973gg-2 through 1973gg-6.  Accordingly, the Court will grant

19  Defendants' motion for summary judgment as to Plaintiffs' fifth claim.

20  **F.      Qualified Immunity**

21          Defendants contend that the individual Defendants are entitled to qualified immunity for

22  their conduct in excluding Plaintiffs from Building 331.  A determination as to an official's

23  entitlement to qualified immunity involves a two-pronged inquiry.  First, do the facts alleged,

24  viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct

25  violated a constitutional right?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sorrels v. McKee*, 290

26  F.3d 965, 969 (9th Cir. 2002).  This first prong mirrors the substantive summary judgment

27  inquiry on the merits of the constitutional claim.  *Sorrels*, 290 F.3d at 969.  Second, if the

28  plaintiff has alleged a deprivation of a constitutional right, was that right clearly established?

1    *Saucier*, 533 U.S. at 201; *Sorrels*, 290 F.3d at 969.  "The relevant, dispositive inquiry in

2    determining whether a right is clearly established is whether it would be clear to a reasonable

3    officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.

4    This inquiry is wholly objective; the defendant's subjective belief as to the lawfulness of his or

5    her conduct is irrelevant.  *Sorrels*, 290 F.3d at 970.

6           In the instant case, viewing the evidence in the light most favorable to Plaintiffs, a

7    reasonable trier of fact could conclude that Plaintiffs were excluded from Building 331 *not*

8    pursuant to an official, viewpoint-neutral VA policy prohibiting voter registration by political

9    parties, but rather for arbitrary or discriminatory reasons.  The Court concludes that such

10   exclusion would violate Plaintiffs' clearly established First Amendment right to register voters

11   and that no reasonable official in Defendants' positions could have believed that exclusion for

12   arbitrary or discriminatory reasons was constitutional.  Accordingly, based upon triable issues of

13   material fact as to the actual reasons for Plaintiffs' exclusion, the Court will deny Defendants'

14   motion for summary judgment based upon qualified immunity.

15   **G.     Plaintiffs' Submission Of Additional Evidence And Argument**

16          Following the close of briefing in this matter under the Civil Local Rules, Plaintiffs made

17   three additional submissions of evidence and argument:  (1) a request for judicial notice, filed

18   May 25, 2007; (2) a motion for leave to file two decisions from the Fourth Circuit decided after

19   submission of the motions, filed January 24, 2007; and (3) a motion for leave to file the

20   government's brief with respect to the facial challenge to § 1.218(a)(14) pending in the Federal

21   Circuit, filed February 9, 2007.

22          As discussed above, the Court will deny Plaintiffs' request for judicial notice of the voter

23   registration forms but has considered the forms as evidence relevant to the pending motions.  The

24   Court will overrule Defendants' objections to this evidence.

25           The Court will grant Plaintiffs' motion for leave to file the two decisions from the Fourth

26   Circuit, *Child Evangelism Fellowship of South Carolina v. Anderson School District Five*, 470

27   F.3d 1062 (4th Cir. 2006) and *Child Evangelism of Maryland, Inc. v. Montgomery County Public*

28   *Schools*, 457 F.3d 376 (4th Cir. 2006).  However, as noted by Defendants, these decisions are

                                                    12

1   non-binding and have limited application to the instant case.  Both decisions address school

2   district policies that vested "unbridled discretion" in school district officials to exclude speech

3   based upon viewpoint.  Nothing in the decisions undermines the Ninth Circuit decision relied

4   upon by this Court in the instant order, *Monterey County*, holding that a federal agency may

5   prohibit voter registration by partisan groups on agency premises, so long as such prohibition is

6   reasonable and viewpoint-neutral.

7        Finally, the Court will grant Plaintiffs' motion for leave to file the governments' brief

8   addressing Plaintiffs' facial challenge to § 1.218(a)(14).  As noted by Defendants, the brief is

9   irrelevant to the issues before this Court.  However, this Court perceives no harm in permitting

10  Plaintiffs to file the brief in this action.

11  **IV. ORDER**

12    (1)    Defendants' motion for summary judgment is GRANTED IN PART AND
        DENIED IN PART as follows:  the motion is DENIED as to Plaintiffs' first claim
13      that they were excluded from Building 331 for arbitrary or discriminatory reasons
        in violation of their First Amendment rights, as to Plaintiffs' fourth claim for
14      conspiracy to violate their First Amendment rights, and as to the individual
        Defendants' claim of qualified immunity.  The motion is GRANTED as to the
15      remainder of Plaintiffs' First Amendment Claims, as to Plaintiffs' second claim
        for intimidation of lawful political contribution, as to Plaintiffs' third claim for
16      violation of equal protection under the Fifth Amendment, and as to Plaintiffs' fifth
        claim for violation of the NVRA;

17

18    (2)    Plaintiffs' cross-motion for partial summary judgment is DENIED;

19    (3)    Plaintiffs' request for judicial notice dated May 25, 2006 is DENIED; however,
        the Court has considered the voter registration forms attached thereto as evidence
20      relevant to the pending motions.  Defendants' evidentiary objections are
        OVERRULED; however, Defendants' request that the voter registration forms be
21      sealed is GRANTED.  The Clerk of the Court shall SEAL the request for judicial
        notice and attached exhibits, filed as Docket No. 109;

22    (4)    Plaintiffs' motion for leave to file two decisions from the Fourth Circuit decided
        after submission of the motions, filed January 24, 2007, is GRANTED; and

23

24    (5)    Plaintiffs' motion for leave to file the government's brief with respect to the facial
        challenge to § 1.218(a)(14) pending in the Federal Circuit, filed February 9, 2007,
        is GRANTED.

25

26  DATED:  3/7/07

27                                      JEREMY FOGE

28                                      United States District Judge

13

This Order has been served upon the following persons:

Owen Peter Martikan    owen.martikan@usdoj.gov, lily.c.ho-vuong@usdoj.gov

Scott Joseph Rafferty    rafferty@alumni.princeton.edu, rafferty@alumni.princeton.edu