**E-filed 1/28/08**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| STEVEN PREMINGER and SANTA CLARA COUNTY DEMOCRATIC CENTRAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES NICHOLSON, as Secretary of Veterans Affairs, and ELIZABETH FREEMAN, Director of the Palo Alto Health Care System,<br><br>Defendants. | Case Number C 04-2012 JF<br><br>MEMORANDUM OF INTENDED DECISION |

Following extensive motion practice and an interlocutory appeal,[1] the disputed issues of fact in the above-entitled action were tried to the Court from April 2-4, 2007. The Court heard the testimony of witnesses and received voluminous documentary evidence both during and subsequent to the trial. Having considered the evidence, the applicable law and the arguments of counsel contained in the post-trial briefing, the Court now issues this memorandum of intended

---

[1] The Court's order denying Plaintiffs' motion for a preliminary injunction was affirmed by the Ninth Circuit in a published opinion. *Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005).

decision.[2] The purpose of the memorandum is to set forth the Court's view of the law and the evidence. Counsel for Defendants will be directed to prepare findings of fact and conclusions of law in conformity with this memorandum.

## I. BACKGROUND

At all relevant times, Plaintiff Steven Preminger ("Preminger") was the Chair of the Santa Clara County Democratic Central Committee ("the Committee"), which also is a Plaintiff herein. This case arises from a series of incidents, described at length in this Court's previous orders, in which Preminger and his attorney, Scott Rafferty ("Rafferty"), were denied access to Building 331 at the Menlo Park facility of the Department of Veterans Affairs ("VA"), to which they had sought entry in order to register voters. Although Preminger and Rafferty at first were told that they could conduct voter registration activities, they subsequently were denied access on the basis that their intended activities were prohibited pursuant to 38 C.F.R. § 1.218(a)(14) ("the regulation"), which restricts partisan political activities on VA property.[3] Plaintiffs initially brought both facial and as-applied challenges to the regulation. The facial challenge was dismissed by this Court for lack of subject-matter jurisdiction and ultimately was resolved by the

---

[2]The issuance of this memorandum was delayed in part in response to Plaintiffs' request that the Court await the resolution of Plaintiffs' facial challenge to 38 C.F.R. § 1.218(a)(14), the application of which Plaintiffs challenge here. The facial challenge was rejected by the Federal Circuit in a published opinion issued August 17, 2007. *Preminger v, Sec'y of Veterans Affairs*, 498 F.3d 1265 (Fed. Cir. 2007). The remainder of the delay resulted from the press of other judicial business; the Court thanks counsel and the parties for their patience.

[3]The regulation provides in relevant part as follows:

(14) Demonstrations.
    (I) All visitors are expected to observe proper standards of decorum and decency while on VA property. Toward this end, any service, ceremony, or demonstration, except as authorized by the head of the facility or designee, is prohibited. Jogging, bicycling, sledding and other forms of physical recreation on cemetery grounds is prohibited.
    (ii) For the purpose of the prohibition expressed in this paragraph, unauthorized demonstrations or services shall be defined as, but not limited to, picketing, or similar conduct on VA property; any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service; the display of any placards, banners, or foreign flags on VA property unless approved by the head of the facility or designee; disorderly conduct such as fighting, threatening, violent, or tumultuous behavior, unreasonable noise or coarse utterance, gesture or display or the use of abusive language to any person present; and partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise.

2

Federal Circuit.[4] The as-applied challenge was resolved in part by the Ninth Circuit in the context of Plaintiffs' appeal of this Court's order denying Plaintiffs' motion for a preliminary injunction; the remainder of that challenge was the subject of subsequent motion practice and the April 2007 bench trial.[5] Also pending resolution is Rafferty's motion for sanctions under F.R.Civ.P. 11, based upon an assertion by Defendants' counsel during the proceedings on Plaintiffs' motion for a preliminary injunction that Rafferty had attempted to photograph a mentally-disabled resident of the Menlo Park facility.

## II. DISCUSSION

### A. Standing

The Court's first task is to determine whether Plaintiffs have standing to assert their remaining claims.[6] Plaintiffs contend that they are entitled to relief not only for themselves–based upon Defendants' actions in denying them access to Building 331–but on behalf of the residents of the Menlo Park facility whom they were attempting to register to vote–based upon the alleged inadequacies of Defendants' policies and procedures for making voter registration materials available to the residents. On the basis of the evidence in the record and the law of the case as determined by this Court and by the two appellate courts that have considered Plaintiff's challenges to the regulation, the Court concludes that Plaintiffs have failed to establish either direct or third-party standing.

Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally

---

[4] The Federal Circuit concluded: (1) that the Secretary of the VA had not exceeded statutory authority or failed to engage in required notice and comment rulemaking; and (2) that section 1.218(a)(14) does not on its face violate the First Amendment. *Preminger v. Sec'y of Veterans Affairs*, 498 F.3d 1265 (Fed. Cir. 2007)

[5] Plaintiffs' remaining claims allege 1) discriminatory enforcement of the regulation and 2) conspiracy by Defendants to violate Plaintiffs' First Amendment rights. *See* Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, etc., Docket No. 130, March 7, 2007.

[6] Plaintiffs argue that Defendants have waived any objection as to Plaintiffs' prudential standing. *See* Plaintiffs' Post-Trial Brief 7-8. However, as discussed below, the dispositive issue with respect to Plaintiffs' standing is the sufficiency of their showing of an injury in fact. Plaintiffs do not suggest that an objection based upon this constitutional element of standing is waivable.

3

protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal citations and quotation marks omitted). In addition to this constitutional minimum, the Supreme Court has recognized prudential limitations on standing, "such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

1. Direct Standing

Plaintiffs argue that the Committee and its officers (including Preminger) have organizational standing because they have suffered a direct injury as a consequence of Defendants' actions. They assert that "[w]hen it excludes Mr. Preminger based solely because he is a member, officer, or supporter of the Democratic Party, the VA <u>directly</u> injures him individually and the party as an institution;" that "the Democratic Party has first-party standing based on the economic and institutional impact of official policies that suppress voter registration or turnout;" and that "[t]he actual exclusion of votes by individuals intending to vote for Democratic candidates constitutes an injury in fact to the Democratic Party." Plaintiffs' Post-Hearing Brief 2-3. However, because the regulation bars *all* partisan political activity, and because this case presents only an as-applied challenge, Plaintiffs must identify an injury beyond simply being barred from the VA campus because the Democratic Party is a partisan political organization.

For example, in *Crawford v. Marion County Election Board*, 472 F.3d 949, 951 (7th Cir. 2007) the Democratic Party was found to have standing to challenge a voter identification law

4

Case No. C 04-2012 JF
MEMORANDUM OF INTENDED DECISION

because the law tended to impose disproportionate additional expenses on Democratic Party voters. *Id.* Having considered the full record and having heard the testimony of the parties and their witnesses, the Court finds that Plaintiffs have not shown a comparable injury in the instant action. Plaintiffs have not proved by a preponderance of the evidence that the regulation, *as applied*, has a disproportionate impact on the Democratic Party,[7] that the regulation was enforced against them in a discriminatory manner,[8] or that their First Amendment rights otherwise were infringed by the way in which Defendants enforced the regulation. At most, Plaintiffs have shown that some VA personnel may have treated them rudely and unprofessionally, conduct which while inappropriate does not rise to the level of a civil rights violation.[9] Accordingly, the Court concludes that Plaintiffs have not shown an injury in fact that gives them direct standing to bring their as-applied challenge to the regulation.

2. <u>Associational Standing and Third-Party Standing</u>

Plaintiffs next argue that they have standing to challenge the VA's voter-registration policy on behalf of the members of the Democratic Party. An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and © neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977).

---

[7] Plaintiffs do offer evidence that many of the unregistered residents of the Menlo Park facility are members of minority groups (e.g., African-Americans) that tend to vote Democratic. While Plaintiffs suggest that this fact has something to do with their exclusion from the Menlo Park campus, there is no admissible evidence in the record that the vigor or consistency with which Defendants enforce the regulation depends upon the demographics of a particular VA facility, or even that a disproportionate number of the residents of Building 331 in fact would register as Democrats or vote for Democratic candidates.

[8] Plaintiffs asserted that "Republican operatives" were allowed access to a different building at the Menlo Park facility on an earlier occasion, but they offered no direct evidence in support of this claim at trial, and the admissible circumstantial evidence they proffered is insufficient to support a finding in their favor.

9 The majority of the residents of Building 331 have long-term mental and/or physical disabilities. In declarations filed earlier in the instant proceedings, VA staff members asserted that Plaintiffs' efforts to register voters within Building 331 put these residents at risk. Defendants' witnesses also testified that Rafferty did not disclose his affiliation with the Democratic Party when he first requested (and was granted) permission to register voters, and that he caused a disturbance when he was informed that such permission had been rescinded. On the basis of the testimony offered at trial, the Court believes that at least some of the staff members overreacted to the situation.

5

Case No. C 04-2012 JF
MEMORANDUM OF INTENDED DECISION

Plaintiffs also argue that they have third-party standing to proceed on behalf of unregistered residents of Building 331. A third party has standing to sue if the party has "suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute[;] . . . a close relation to the third party," and there exists "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (internal citations and quotation marks omitted).

As is the case with direct standing, Plaintiffs have failed to prove injury to themselves or to the third parties whose interests they seek to represent *based on Defendants' application of the regulation*. In particular, Plaintiffs have failed to prove by a preponderance of the evidence that *as a result of the manner in which the regulation has been applied*, any resident of the Menlo Park VA facility has been denied the opportunity to register to vote. While Plaintiffs presented evidence at trial tending to show that Defendants can and should do a better job of assisting residents with voter registration,[10] their actual claims in this action–and the only claims that were before the Court at trial–are based on their contention that *the regulation* has been applied in an unconstitutional manner.[11] To the extent that Plaintiffs challenge the regulation on the basis that it impermissibly limits residents' ability to register to vote by prohibiting representatives of partisan organizations from having access to them, Plaintiffs did not prove by a preponderance of the evidence at trial that residents' voting rights can be protected only by permitting Plaintiffs (or representatives of partisan organizations generally) to register voters at the facility.

Because Plaintiffs lack standing to assert their remaining claims with respect to the

---

[10] *See* Section B., *infra*.

[11] *See* Note 5, *supra*. On October 24, 2007, Plaintiffs filed a document entitled "Request for Status Conference" in which they argue that the scope of the Federal Circuit's decision upholding the regulation was unduly limited and that accordingly this Court must expand the reach of Plaintiffs' as-applied challenge in order that the two cases together will "collectively exhaust the judicial review of alleged constitutional defects in VA policies and their enforcement (footnote omitted." Request for Status Conference, Docket No. , October 24, 2007. As discussed in Section B, *infra*, it is true that certain questions suggested by the evidence–including the adequacy of the VA's present voter registration program–remain unadjudicated. However, no case authority requires that all potential as-applied challenges to a statute or regulation be determined in a single case. Plaintiffs apparently seek to re-open the presentation of evidence after trial and briefing have been completed and to assert legal theories they have not previously pled. Accordingly, the request will be denied, without prejudice to any future litigation Plaintiffs or others may deem appropriate.

6

regulation, Defendants are entitled to entry of judgment in their favor.[12] While Plaintiffs' pleadings were adequate to establish standing initially, there is an important distinction between alleging facts supporting standing and proving those facts at trial. Here, as in many cases, the line between standing and the merits is somewhat blurred. *See e.g. Holtzman v. Schlesinger*, 414 U.S. 1316, 1319 (1973) (Douglas, J., in chambers) (describing a class of cases in which "standing and the merits are inextricably intertwined"). However, because it may not simply assume jurisdiction and determine the merits, *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998) (rejecting doctrine of hypothetical jurisdiction), and because in the absence of standing the Court may not craft any equitable remedies, the Court will resolve this matter under the standing doctrine and not on the merits.

### B. Adequacy of Defendants' Voter Registration Policies

Notwithstanding the foregoing discussion, the Court in no way intends to minimize the importance of the rights at issue in this case. The evidence presented by Plaintiffs at trial raises substantial questions as to whether the VA's existing policy of allowing a single non-partisan group–the League of Women Voters–to conduct voter registration activities is effective in ensuring that any resident who wishes to register has a meaningful opportunity to do so. Another unresolved question is whether by selecting a specific non-partisan group to register voters the VA assumes a legal responsibility to supervise that group and to monitor its effectiveness. Nothing in this memorandum is meant to preclude persons with cognizable standing (such as residents of the facility or even proper third parties acting on their behalf) from raising these issues in future litigation. The Court strongly encourages the VA to ensure that its voter registration policies allow the largest number of qualified residents of VA facilities to exercise their right to vote.

### C. Rafferty's Motion for Rule 11 Sanctions

Prior to trial, the Court indicated that based upon evidence already in the record, it was

---

[12] Without prejudice to Defendants' objection, the Court has considered the statistical evidence and arguments asserted by Plaintiffs in a supplemental brief and declaration filed by Rafferty after trial. While these materials show that the VA's voter registration program has failed to reach many of the facility's residents, they do not show that *Plaintiffs* have standing to compel Defendants to make the program better.

7

Case No. C 04-2012 JF
MEMORANDUM OF INTENDED DECISION

prepared to make an express finding that, contrary to the assertion of Defendants' counsel during the proceedings on Plaintiffs' motion for a preliminary injunction, Rafferty did not attempt to photograph a mentally-disabled resident of the Menlo Park facility.[13] Rafferty has stated repeatedly that this assertion was baseless and has caused significant damage to his personal and professional reputation. Rafferty nonetheless indicated before trial that if Plaintiffs were to prevail and thus become entitled to statutory attorney's fees, he would not pursue his motion for Rule 11 sanctions. In light of the disposition set forth herein, the Court will hold a hearing on Rafferty's motion should Rafferty wish to proceed with it. Rafferty shall notify the Court as to his intentions within thirty (30) days of the date of this memorandum.

### III. DISPOSITION

Counsel for Defendants is requested to prepare findings of fact and conclusions of law consistent with this memorandum, together with a proposed judgment.

DATED: January 28, 2008.

_____
JEREMY FOGEL
United States District Judge

---

[13] The Court expressed no opinion as to whether or not Defendants' counsel made the assertion in good faith.

This Order has been served upon the following persons:

Owen Peter Martikan     owen.martikan@usdoj.gov, lily.c.ho-vuong@usdoj.gov, stefania.chin@usdoj.gov

Scott Joseph Rafferty     rafferty@alumni.princeton.edu

James A. Scharf     james.scharf@usdoj.gov, mimi.lam@usdoj.gov